UNITED STATES v. AMERICAN CHICLE CO. (No. 2014).[1]

1. CONSTRUCTION, PARAGRAPH 36, TARIFF ACT OF 1913—"CHICLE * * * ADVANCED IN VALUE."

It is settled law that not every slight advance in value is sufficient to constitute such an advance as to render merchandise dutiable at the higher rates provided for it by the import revenue laws when advanced in value; and paragraph 36, tariff act of 1913, levying a lower rate of duty upon "chicle, crude," and a higher rate upon it "refined or advanced in value by drying, straining, or any other process or treatment whatever beyond that essential to the proper packing," will be construed accordingly.

2. "CHICLE, CRUDE."

Chicle was shipped from Mexico into Canada and from Canada into the United States. In Canada it was bruised or hammered into smaller particles and in part resacked, these processes being related to packing and transportation rather than to manufacture and increasing the value only from 28 to 30 cents per pound, the crushing enhancing the value only one-half of a cent per pound. As imported into the United States the chicle was intermixed with dirt, bark, sticks, and other foreign substances. This can not be regarded as "chicle * * * refined or advanced in value by drying, straining, or any other process or treatment whatever beyond that essential to the proper packing," under parargaph 36, tariff act of 1913, but was properly classified as "chicle, crude," under the same paragraph.

## United States Court of Customs Appeals, March 24, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8293 (T. D. 38153).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Crim & Wemple* (*George C. Winne* of counsel) for appellees.

[Oral argument Feb. 24, 1920, by Mr. Lawrence and Mr. Winne.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise is chicle. The concededly representative sample of the importation, which was made at the port of Detroit, consists of small portions of chicle pronouncedly intermixed with particles of dirt, bark, sticks, and other foreign substances. The record discloses that the shipment originated in Mexico, was first taken to Toronto, Canada, whereat it was bruised or hammered from larger into smaller particles, in part resacked, and thereupon imported into the United States at the port of Detroit. The collector at that port assessed duty thereupon at the rate of 20 cents per pound under the latter part of paragraph 36 of the tariff act of 1913 as chicle advanced in value beyond that essential to the proper packing, which paragraph in so far as pertinent reads:

36. * * * chicle, crude, 15 cents per pound; refined or advanced in value by drying, straining, or any other process or treatment whatever beyond that essential to the proper packing, 20 cents per pound; * * *.

---

[1] T. D. 38360 (38 Treas. Dec., 288).

The protestants claim that the chicle has not been advanced in value by drying, straining, or any other process or treatment whatever within those terms of that paragraph, and that it is properly classifiable for dutiable purposes thereunder at 15 cents per pound as chicle, crude.

The matter of chicle, as dutiable under this paragraph, and as imported by these protestants, has been the previous subject of adjudication by this court in two cases, Sheldon & Co. *v.* United States (8 Ct. Cust. Appls., 9; T. D. 37123); American Chicle Co. *v.* United States (9 Ct. Cust. Appls., 1; T. D. 37841). In the earlier cases, however, the treatment accorded the chicle at the plant at Toronto, Canada, was far more extensive than that here had. The merchandise the subject of those decisions had been desiccated. It had been artifically dried and ground to that degree of fineness necessary for its immediate manufacture from that condition into chewing gum. In this case, however, the processes applied to the merchandise have by no means been so extensive. The board found, and the testimony makes it clear, that the only process to which it had been subjected was that of a bruising or crushing process. This crushing, while one of the processes employed in the manufacture of chicle into chewing gum, was not here sufficiently applied to render the application of that process subsequently unnecessary in such manufacture.

It seems that in the first instance the chicle is put into bags in Mexico in a wet or moist condition. In the course of transit to the plant at Toronto, Canada, naturally some of the moisture evaporates. This loss, it appears from the record, approximates 15 per cent. Naturally, also, the moisture in the bags rots a portion of them; wherefore, if the merchandise is reshipped or reloaded it must be re-sacked, and there is a consequent loss of many of the bags. It likewise appears by the testimony that in the resacking the transportation thereof can be advantaged by the crushing into smaller particles, whereby the bulk and consequent freighting expense obviously will be reduced.

It is made clear by the record that this importation is not one in the ordinary course of business of the importing firm. It was an unusual importation necessitated by the business of the firm whereby instead of desiccating the chicle at the plant in Toronto, it was simply crushed without any artificial extraction therefrom of water or of chips and foreign substances.

It satisfactorily appears from the record, as stated by the board, that this bruising or crushing process, together with the resacking thereof, including the value of the new sacks therefor, advances the value of the article from 28 cents per pound to 30 cents per pound approximately. Of these advancements in value, however, *less than*

*one-half of 1 cent per pound is added by the bruising or crushing process.* The remaining portion is made up of the repacking charges, including the necessary new sacks.

The court is of the opinion that the aforesaid manipulations are not sufficient to so far advance the particular importation in value or condition that it should have been assessed as chicle refined or advanced in value by drying, straining, or any other process or treatment whatever beyond that essential to the proper packing within said paragraph 36.

It will be noted in passing that the uncontradicted testimony shows that the application of processes to the chicle *per se* does not amount to more than one-half of 1 cent per pound, while the increased rate of duty under the paragraph as assessed is 5 cents per pound.. While the statute requires that the stated advancements in value must be sufficient to bring it within the higher classification of the law, nevertheless it is settled law that not every slight advance in value is sufficient under such provisions of the import revenue laws to constitute such an advance. The point in principle was the subject of consideration by this court in United States *v.* Sheldon & Co. (2 Ct. Cust. Appls., 485; 496; T. D. 32245), wherein we said:

"In Schoenmann *v.* United States (119 Fed. Rep., 584, 587), the Circuit Court of Appeals, Third Circuit, announced the same principle, reversing the circuit court, board, and the collector. The question was whether certain shells from which marine animals had been taken and the shells themselves cleansed, by being put into a tub with chloride of lime and then washed with clean water, in order to remove all animal matter, dirt, and offensive smell, were free, as 'shells not sawed, cut, polished or otherwise manufactured, or *advanced in value* from the natural state.' The court stated. (Italics ours.)

It is, however, contended that the shells have been "advanced in value from the natural state," within the meaning of those words in the paragraph referred to, and that therefore they are excluded from the free list. We do not think, however, that the cleansing of these shells, in the manner disclosed by the evidence and already discussed, *though adding slightly to their value,* effected a change in them "from the natural state." Sea shells are the hard, organized substances forming the exterior covering and protection of certain marine animals, and these hard, bony coverings are not changed from their natural state by having these animals and the adventitious and foreign matter clinging to them removed. They are no part of the shell, and the natural state of the shell remains after this removal takes place. It would be as reasonable to say that the natural state of the shell existed only when the marine animal, which it contained and protected, was present, as to say that there was a change from the natural state, wrought by cleansing it from foreign substances which were no part of it.

The principle there applied is that it is not every slight advance in value which will satisfy such statutes. Here there is no complete manufacturing process or step had, in that the material must in its

intended manufacture be again put through the same process.    The *per se* advancement in value is but one-half of 1 cent per pound, while the additional duty exacted therefor is 5 cents per pound.    It seems quite within this record that this crushing was no more than prudent and careful business would prompt to insure safe and economical transportation of the merchandise from Toronto, and did not constitute the substitute performance of one of the processes applied in the subsequent manufacture of the chicle into chewing gum.

The court finds herein no warrant for disturbing the decision of the Board of General Appraisers, which should be and hereby is affirmed.